494 P.2d 1357

**Horace Whitney KIMBALL, Appellant,**

**v.**

**Dr. Weldon P. SHOFSTALL et al.,**
**Appellees.**

**No. I CA–CIV 1632.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 27, 1972.

Rehearing Denied April 19, 1972.

Review Denied June 20, 1972.

**12**

———◆———

Hughes, Hughes & Conlan, by Coit I. Hughes, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., by Leonard M. Bell, Asst. Atty. Gen., for appellees Members of the State Bd. of Ed.

Robert R. Bean, County Atty. of Pinal County, for appellee Mary C. O'Brien.

STEVENS, Presiding Judge.

The State Board of Education (herein referred to as the State Board) held a hearing on 1 April 1970 to consider certain charges lodged by Mary C. O'Brien against Horace Whitney Kimball. The charges were filed by her as an individual and not in her official capacity as the County School Superintendent of Pinal County. During the course of the hearing the State Board dismissed two of the four charges. The remaining charges relate to Kimball's performance of his contracts, first, as Superintendent of the Dateland Elementary School in the Hyder School District in Yuma County during the 1968–1969 school year, and second, as Superintendent of Schools at Apache Junction in Pinal County during the 1969–1970 school year. At Kimball's request the hearing was reported by a court reporter.

On 3 April 1970 the State Board, by unanimous vote of the members who attended the hearing, entered the following action:

"IT IS ORDERED that any and all administrative certificates held by Horace Whitney Kimball are hereby revoked and that any and all teaching certificates held by Horace Whitney Kimball are hereby indefinitely suspended."

On 8 May 1970 Kimball filed a complaint in the Superior Court for Maricopa County seeking to review the action of the State Board. He named the members of the State Board as defendants designating them as " * * * the duly appointed, qualified and acting members of the State Board of Education of the State of Arizona." The foregoing defendants were represented by The Office of The Attorney General. Kimball joined as a defendant Mary C. O'Brien in her official capacity as a County School Superintendent for Pinal County. She was represented separately by the County Attorney of Pinal County. In his complaint Kimball requested a trial de novo to a jury and in his motion to set he requested a jury trial.

Doctor J. Lawrence Walkup was joined as a party by designating him as a member of the State Board. He was not a member of the State Board at the time of the hearing and on his motion the complaint was dismissed as to him. There is no appeal from this order. Joseph S. Jenckes, Jr., was a member of the State Board and participated in the hearing. He was also joined as a defendant. His death was suggested in the pleadings and this Court does not carry his name forward as an appellee.

The exhibits which were introduced into evidence at the State Board hearing as well as the reporter's transcript of the hearing were filed in the Superior Court. The defendants resisted the request for a jury trial and for a trial de novo. The trial judge reviewed the record and found that " * * * there was sufficient evi-

dence to uphold the decision and order of the Arizona State Board of Education * * *." Thereafter, and without a trial, the trial court entered a formal written judgment upholding the 3 April 1970 order of the State Board.

Kimball filed a timely notice of appeal which was served only on The Attorney General. Hereinafter we hold that no appeal was taken as to Mary C. O'Brien.

## STATE BOARD OF EDUCATION AS A PARTY

■ It was urged in the trial court and it is urged before this Court that the State Board was a necessary party in the Superior Court and that the failure to join the State Board was a fatal defect. We do not agree. The State Board of Education is a constitutional body. See §§ 2 and 3 of Art. 11 of the Arizona Constitution. The State Board is also the subject of A.R.S. §§ 15–101 to 15–103. Neither the constitution nor the statutes provide that the State Board is an autonomous body with the right to sue and to be sued. There are governmental administrative agencies which can sue and be sued. See A.R.S. § 38–743, subsec. A relating to the Arizona State Retirement System. The State Board not being autonomous, the members of the State Board were the only necessary parties.

## JUDICIAL REVIEW

A.R.S. § 15–102 sets forth the powers and duties of the State Board. Subsection 20 vests in the State Board the power to "[s]upervise and control the certification * * *" of teachers, principals and superintendents. Subsection 22 vests in the State Board the power to revoke these certificates. The statutes relating to the State Board are silent as to judicial review and the right of judicial review is found in Arizona's Administrative Review Act being A.R.S. §§ 12–901 to 12–914. The Administrative Review Act supplements specific provisions which are contained in statutes relating to the governmental

agencies whose actions are subject to judicial review. Campbell v. Chatwin, 102 Ariz. 251, 428 P.2d 108 (1967). The express statutory provisions vary from agency to agency. In Meyer v. Campbell, 13 Ariz.App. 601, 480 P.2d 22 (1971), the Court of Appeals pointed out a number of statutes illustrating the variables in judicial review.

## TRIAL DE NOVO AND JURY TRIAL

■ Kimball urges that in connection with this judicial review A.R.S. § 15–255 gives him the right to a trial de novo. That section relates to the judicial review of teacher contract problems with the school boards and it is not applicable to the State Board. If A.R.S. § 15–255 was applicable, the Superior Court action would not have been timely as that section requires that the Superior Court action be filed within ten days and Maricopa County would not have been the appropriate county for the suit since that section provides that the suit be filed in the county in which the teacher was employed. Kimball proceeded under the Administrative Review Act utilizing the 35 days which A.R.S. § 12–904 allows for the filing of the action. We turn then to A.R.S. § 12–910 which is as follows:

"12–910. Scope of review

"A. An action to review a final administrative decision shall be heard and determined with convenient speed. The hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. No new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court, except in the event of a trial de novo or in cases where in the discretion of the court justice demands the admission of such evidence.

"B. The trial shall be de novo if trial de novo is demanded in the complaint or answer of a defendant other than the

agency and if no hearing was held by the agency or the proceedings before the agency were not stenographically reported so that a transcript might be made. When a trial de novo is available under the provisions of this section, it may be had with a jury upon demand of any party."

A.R.S. § 12–910, subsec. A provides that there shall be "no new or additional evidence * * * except * * * in cases where in the discretion of the court justice demands the admission of such evidence" or unless there be a trial de novo under subsection B. It was obvious that the trial court, in the instant case, was of the opinion that justice did not so demand.

■ A.R.S. § 12–910, subsec. B relates to trials de novo. The complaint demanded both a trial de novo and a jury trial. This section clearly states that such demand alone is not enough. An additional prerequisite to the right of the trial de novo is that " * * * the proceedings before the agency were not stenographically reported so that a transcript might be made." See Foote v. Gerber, 85 Ariz. 366, 339 P.2d 727 (1959), and Arizona State Retirement Board v. Gibson, 2 Ariz.App. 609, 411 P.2d 47 (1966). In the instant matter the hearing was stenographically reported and there was a transcript thereof. We find an absence of error in the trial judge's denial of a trial de novo, with or without a jury, and our review of the record convinces us that there was no error in the trial court's exercise of its judicial discretion when it determined that justice did not demand the receipt of additional evidence.

### O'BRIEN NOT AN APPELLEE

■ The formal written judgment was filed on 17 September 1970. Kimball served his motion for new trial on 28 September 1970, serving only The Attorney General. This was timely as the tenth day fell on Sunday and 28 September was Monday. Rule 6(a) and Rule 59(d), Rules of Civil Procedure, 16 A.R.S. The motion for new trial was not served on counsel for Mary C. O'Brien. The trial court's minutes disclose that the motion for new trial was argued and denied on 20 October 1970, Mary C. O'Brien's counsel not participating. The formal written order denying the motion for new trial was filed on 22 October 1970. On 18 December 1970 the notice of appeal and bond on appeal were filed followed six days later by the designation of record on appeal. The order denying the motion, the notice of appeal and the designation were served by Kimball's counsel on only The Attorney General. While Civil Rule 73(e) contemplates that the notification of the filing of the notice of appeal be by the Clerk of the Superior Court, we hold that service of a copy of the notice of appeal by counsel fulfills the requirements of this Rule.

■ There being no motion for new trial directed to Mary C. O'Brien, the judgment as to her became final and non-appealable 60 days following the entry of judgment on 17 September 1970. Civil Rule 73(b) (1). As to the remaining appellees, the time to appeal was extended by the timely motion for new trial. Civil Rule 73(b) (2). As to the remaining appellees the notice of appeal was timely following the filing of the formal written order denying the motion for new trial. Civil Rule 73(b) (2). The remaining appellees attack the appeal urging that she was a necessary party to the appeal. We do not agree.

A.R.S. § 12–908 specifies the persons who shall be parties in the Superior Court action to review the decision of the State Board. Mary C. O'Brien was a party in the Superior Court and the statute was observed. There are separate sections which relate to appellate review, namely A.R.S. §§ 12–913 and 12–914. These sections are silent as to the parties to the appeal beyond the Superior Court. An appellant need not appeal a judgment *in toto* and Kimball elected to appeal only in relation to the members of the State Board. This was his privilege.

## THE DECISION OF THE STATE BOARD OF EDUCATION

We have disposed of the procedural problems and we now reach the merits of the 3 April 1970 order of the State Board. We have heretofore cited A.R.S. § 15–102 relating to the powers and duties of the State Board. In part this section reads:

"The state board of education shall:

\*   \*   \*   \*   \*   \*

"22. Revoke all certificates or life diplomas for immoral or unprofessional conduct or for evident unfitness to teach."

Each case must stand or fall on its own facts. We do not set forth an extensive review of the evidence.

The Dateland School was a small school with at most approximately 100 students and there were discrepancies in the classroom enrollment reports, including Kimball's own child who was under school age, which caused problems in the matter of the proper claims for average daily attendance monies. Kimball appears to have been too busy to properly supervise these essential reports. There are instances of an absence of proof of age and entitlement to attend school.

At Apache Junction Kimball secured the employment of teachers' aides to be paid out of Title I funds, there then being no pending application for these funds. Kimball then made a late application for Title I funds. Therein he made representations which were not based upon fact. He made representations to the School Board as to the existence of the application when no application had been filed.

The record before the State Board contains other representations of fact with an absence of a factual basis, more particularly that Kimball held a master's degree.

From an overall review of the record we find that there was ample evidence to support the order of the State Board to revoke "any and all administrative certificates" and to indefinitely suspend "any and all teaching certificates."

The judgment of the Superior Court which affirmed the action taken by the State Board of Education is affirmed.

DONOFRIO and HAIRE, JJ., concur.